UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONALD KAFAFIAN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-1657 (JCH) |
| | : | |
| v. | : | |
| | : | |
| FAIRFIELD POLICE DETECTIVE, | : | SEPTEMBER 7, 2011 |
| WILLIAM D. YOUNG, JR., Individually, | : | |
| Defendant. | : | |
| | : | |

**RULING RE: DEFENDANT'S MOTION TO DISMISS (Doc. No. 40)**

## I.  INTRODUCTION

Plaintiff, Donald Kafafian ("Kafafian"), brings this action against defendant, Detective William D. Young, Jr., for damages resulting from Kafafian's arrest. Kafafian claims Young's actions violated of 42 U.S.C. § 1983, as well as the Fourth, Fifth, and Fourteenth Amendments. Specifically, Kafafian claims that, as a result of Young's actions, Kafafian was arrested without probable cause. In addition, Kafafian claims that his arrest was the result of Young's negligent investigation.

Young has filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Kafafian fails to state a claim upon which relief may be granted. For the following reasons, the court grants Young's Motion to Dismiss.

## II.  BACKGROUND[1]

In or about June 2005, Diane Kafafian ("Ms. Kafafian"), plaintiff's wife, entered into a verbal partnership arrangement with her cousin, Scott Jevarjian, where both agreed to purchase a small tuxedo rental and dry cleaning business, known as "The

---

[1] For the purposes of a motion to dismiss, the court takes the factual allegations in the Complaint as true, and draws all reasonable inferences in favor of the plaintiff.

House of Formals" from Ms. Kafafian's father.  Amd. Compl. at ¶ 8.  Although Ms. Kafafian did not have any experience managing or operating this type of business, her husband had extensive experience owning and operating small, dry cleaning businesses.  See id. at ¶¶ 6, 9.  As a result, Ms. Kafafian and Jevarjian agreed that Ms. Kafafian would be a partner in name only, and that at all times, her husband would act in her place as a de facto partner.  See id. at ¶ 9.  The parties also agreed that Ms. Kafafian would own a fifty-one percent legal interest, and Jevarjian would own a forty-nine percent interest.  Id. at ¶ 10.

In the early months of operation, the House of Formals required an immediate capital investment in order to continue operation.  See id. at ¶ 11.  Between July 1, 2005, and December 31, 2008, Kafafian lent $89,700.00 of his own money to the partnership in order to allow the House of Formals to continue operation.  See id. at ¶¶ 11–12.  Jevarjian did not contribute any money to the business.  Id. at ¶ 12.

In or about the fall of 2008, a business dispute developed between Jevarjian and Kafafian after Jevarjian accused Kafafian of misappropriating partnership funds by drawing a check for $32,000 from the company's account, payable as a temporary loan to Kafafian's friend, Pat Basile.  See id. at ¶¶ 13–14.  When confronted with Jevarjian's belief, Kafafian explained that, although the funds had come from the business account, the money was in fact Kafafian's money, as he had lent money to the House of Formals, which money the business had not yet repaid.  See id. at ¶ 15.

In response to this explanation, Jevarjian contacted the Fairfield Police Department and met with Detective Young regarding his view of Kafafian's actions.  See id. at ¶ 16.  On December 11, 2008, Young informed Kafafian by telephone of his

2

meeting with Jevarjian. Id. at ¶ 17. During this phone call, Kafafian informed Young that, despite Jevarjian's characterizations, Kafafian in fact was not merely an employee, but the de facto, controlling partner of the business and that, at all times, he was acting with full approval of his wife, who was the legal, controlling partner. Id. at ¶ 17(a)–(b). In addition, Kafafian informed Young that Jevarjian's accusations regarding the Basile loan were baseless due to the loan Kafafian had made to the business which had not been repaid. Id. at ¶ 17(d). Kafafian explained that, because the business owed him this money, he was entitled to draw that money from the business account at any time he wanted. Id. Finally, Kafafian volunteered to arrange a meeting between Young and the partnership's accountant or between Young and Ms. Kafafian. Id. at ¶ 18.

In January 2009, Ms. Kafafian instituted proceedings in Superior Court seeking dissolution of the partnership and money damages from Jevarjian. See id. at ¶ 21. Jevarjian was served with the papers in this suit on February 3, 2009.

On February 12, 2009, Jevarjian met again with Detective Young and executed an Affidavit requesting Kafafian's arrest. See id. at ¶ 24. In the Affidavit, Jevarjian asserted that Kafafian had fraudulently obtained credit cards in the name of the business and paid balances on those cards from the store's business checking account without Jevarjian's knowledge. Id. Young undertook an independent investigation into Kafafian's credit card activity. See id., Ex. C at ¶¶ 4–9.[2] On February 16, 2009, Young prepared an Affidavit in support of an arrest warrant application to the Connecticut Superior Court. Id. at ¶ 26. The warrant issued on February 20, 2009. Id. at ¶ 26.

---

[2] At the motion to dismiss stage, the court may properly consider any written instrument attached to the complaint as an exhibit. See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

On or about March 3, 2009, Young arrested Kafafian on the larceny and credit card fraud charges outlined in the warrant. See id. at ¶ 32. All charges were dismissed on April 28, 2010. Id.

### III. STANDARD OF REVIEW

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court takes the allegations of the Complaint as true and construes them in a manner favorable to the plaintiff. See, e.g., Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002). The court must draw all reasonable inferences in the plaintiff's favor. See, e.g., Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005).

A motion to dismiss for failure to state a claim tests only the adequacy of the Complaint. See United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004). Bald assertions, and mere conclusions of law, do not suffice to meet the plaintiff's pleading obligations. See Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006). Instead, a plaintiff is obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), rev'd on other grounds sub. nom. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S.Ct. at 1949.

### IV. DISCUSSION

#### A. Sufficiency of the Warrant

Kafafian argues that Young violated section 1983 and the Fourth, Fifth, and Fourteenth Amendments because he arrested Kafafian without probable cause. The

4

right not to be arrested without probable cause is clearly established. See Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000). In challenging the sufficiency of a warrant on this basis, a plaintiff must demonstrate: (1) "that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant" and (2) "that such statements or omissions were necessary to the finding of probable cause." See Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994). "Disputed issues are not material if, after crossing out any allegedly false information and supplying any omitted facts, the 'corrected affidavit' would have supported a finding of probable cause." Id. The existence of probable cause is a complete defense to a claim of false arrest under section 1983. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

1.   Probable Cause

Generally, probable cause exists when a police officer has knowledge or reasonably trustworthy information that is sufficient to allow a person of reasonable caution to believe that the person to be arrested has committed a crime. See Weyant, 101 F.3d at 852. Information received from a putative victim is sufficient to establish probable cause, unless the circumstances raise a doubt as to the person's veracity. See Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (finding that conflicting accounts from a victim and an arrestee do not negate probable cause). Once a police officer has a reasonable basis to believe probable cause exists, he is not required to investigate further, even if further investigation would be a more ideal procedure. See id.

Kafafian's pleadings do not sufficiently challenge the basis of the warrant Young obtained. Kafafian alleges that Young knowingly or recklessly omitted information from his Affidavit that he obtained during their phone conversation in December 2008, which information, if included, would have had a material effect on the judge's decision to issue the warrant. See Amd. Compl. at ¶¶ 29–30. Specifically, Kafafian asserts that Young knew he was not a "mere 'employee,'" but was actually the de facto controlling partner; that Ms. Kafafian had never claimed that she had been the victim of any fraud; and that the money Kafafian had lent to the business far exceeded the money he had drawn from the business between 2005 and 2008.[3] See id. at ¶¶ 30(a), (b), (c), (g).

Kafafian also claims that Young had adequate reason to doubt the veracity of Jevarjian's statement. As a result of their phone conversation, Young was aware that Kafafian resided in New Jersey rather than Connecticut; that the business was a two-man operation; that Kafafian was the "de facto controlling partner" and his wife was the legal partner; that Kafafian had a "claim of right" to the money he drew from the business; and that Kafafian had offered to allow Young to review unedited business records. See Amd. Compl. at ¶¶ 25(i), (iii), (iv), (v), (vii).

Even assuming this information was improperly omitted and such information is added to Young's Affidavit, however, it is clear that the Affidavit would still have been supported by probable cause. Even a de facto controlling partner may defraud a business and his partners. In fact, Kafafian's assertions to Young that he was entitled

---

[3] Kafafian also asserts that Young should have known of the Kafafian's pending civil action in Superior Court, that Ms. Kafafian had full knowledge and had approved Kafafian's decision to obtain the credit cards in the name of the business, that the cards had been obtained with the full knowledge of both partners, and that Young should have doubted the veracity of the "cherry picked" accounting records Jevarjian produced. See Compl. at ¶¶ 25 (vi); 30(d), (e), (f). Kafafian does not allege, however, that he discussed this information with Young, or that police protocol would have led Young to discover this information. Consequently, these assertions are not pertinent to the Velardi analysis. See Velardi, 40 F.3d at 572.

6

to use the business's funds as if they were his own due to the debt owed to him by the business demonstrate a cavalier attitude towards proper accounting of business funds and corporate structure. See Amd. Compl. at ¶ 30(g); see also Spector v. Konover, 57 Conn. App. 121, 128 (Conn. App. Ct. 2000) ("The defendants' misuse of partnership property is a clear case of self-dealing and a violation of their fiduciary duty to the plaintiff. As managing partner, [the defendant] held a unique position of responsibility within the partnership.").[4]

Wrongful appropriation of corporate assets, even by a controlling stockholder, may constitute larceny. See Conn. Gen. Stat. § 53a-119(1); State v. Radzvilowicz, 47 Conn. App. 1, 18 (App. Ct. 1997) (holding that a co-owner is guilty of larceny where he wrongfully appropriated corporate property for personal use). In addition, Young's own investigation corroborated Jevarjian's sworn statement, in that several charges on the business credit cards appeared to be for personal expenses, including hotel rooms, meals, liquor, and some charges that occurred out of state. See Amd. Compl., Ex. C at ¶ 9. Consequently, Young had a reasonable basis to believe that probable cause existed to support his Affidavit.

B. Qualified Immunity

Even if the warrant had not been supported by probable cause, however, Young is entitled to qualified immunity for his actions. On an allegation of false arrest, an officer is entitled to qualified immunity if he can show "arguable" probable cause, in that reasonably competent officers could disagree on whether probable cause existed. See Martinez, 202 F.3d at 634. Absent circumstances that raise doubts as to a victim's

---

[4] Although Kafafian's claims add further information to Young's Affidavit under Velardi, Kafafian does not provide any information to prove the terms of the loan or the terms under which Kafafian expected the business to repay the loan.

7

veracity, an officer has probable cause to conduct an arrest when he has been informed of a crime by someone who claims to be the victim and who has signed a complaint or information.  See Singer v. Fulton Cnty Sheriff, 63 F.3d 110, 119 (2d Cir. 1995).  Where an informant does not have a proven record of truthfulness, his account may be credited if it is corroborated in material aspects, even if not all aspects are corroborated.  See United States v. Wagner, 989 F.2d 69, 73 (2d Cir. 1993).  It is only necessary to show the probability of criminal activity to establish probable cause.  See id. at 72.  Once an officer has a reasonable basis to believe that probable cause exists, he is not required to eliminate every theoretically plausible claim of innocence prior to making an arrest.  See Curley, 268 F.3d at 70.

   Even assuming Kafafian's assertions regarding Jevarjian's veracity are accurate, Young is entitled to qualified immunity due to the fact that, given Jevarjian's sworn statement and the information available to Young at the time, it is arguable that probable cause existed.  Young relied on what he believed to be the sworn statement of a victim of a crime.  In addition, rather than relying solely on Jevarjian's statement, though he may have been entitled to do so, Young conducted an independent investigation into Kafafian's credit card records, which appeared to contain several personal charges and corroborate Jevarjian's claims.  See Amd. Compl., Ex. C at ¶ 9.  Given Jevarjian's sworn statement and Young's investigation, the information Kafafian had provided to Young in December 2008, would not necessarily cause a reasonable police officer to question Jevarjian's veracity.  Consequently, at a minimum, Young had arguable probable cause when he submitted his Affidavit for the arrest warrant.

   C.   Negligence

Kafafian also alleges that Young was negligent in his failure to conduct "a full, fair, and proper investigation" into Jevarjian's allegations. Amd. Compl. at ¶ 40. Kafafian asserts that his conversation with Young in December 2008, provided Young with additional information that led to Young having "a clear duty" to inquire further regarding Jevarjian's claims. See id. at ¶ 40(a)–(b). Young asserts that, even if that were the case, he is entitled to governmental immunity under state law.

A municipal employee has governmental immunity for his performance of governmental acts. See Violano v. Fernandez, 280 Conn. 310, 318 (2006). An act that is supervisory or discretionary in nature is a governmental act. See id. It is well-established that a police officer's investigation into a criminal complaint is a matter of discretion. See Brown v. Dooling, 1998 WL 43197, at *4 (Conn. Super. Ct. Jan. 23, 1998). Given Young's determination that probable cause existed based on Jevarjian's statement and his own independent investigation, it fell within his discretion to determine whether additional investigation was necessary. As a result, his decision is entitled to governmental immunity.

**V.   CONCLUSION**

For the foregoing reasons, the court grants defendant's Motion to Dismiss (Doc. No. 40).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 7th day of September, 2011.

   /s/ Janet C. Hall
Janet C. Hall
United States District Judge